Good morning. My name is Anna Benvenuti-Hoffman. I represent Susan Mellen, plaintiff appellant, and her children, and I'm going to try to reserve five minutes of time. It is undisputed that Susan Mellen is actually innocent, that she spent 17 years separated from her children, wrongly imprisoned for a murder she did not commit. It is undisputed that essentially the only evidence used to wrongly convict her was the false claim by June Patti that Mellen had confessed. And it is undisputed that June Patti was well known as a habitual liar with a long history of false reports to law enforcement. Finally, it is undisputed, a reasonable jury could find, that before Susan Mellen was charged, defendant Marcella Winn called a respective law enforcement officer, Laura Patti, specifically to ask about June Patti's character. In other words, to find out whether this is someone whose word you should use to put someone else in prison for life. And the response that Laura Patti gave her was the worst possible response you could get to that question. The response was, this is the biggest liar I have ever met in my life, and I don't believe a word she says. And it is undisputed that Marcella Winn knew that she had to report that information to the district attorney, and she never did so. Those facts establish a Brady violation under case after case after case from this Court and the Supreme Court. There is no reasonable dispute that a law enforcement officer who fails with the least deliberate indifference to disclose material impeachment evidence to the prosecutor, which then causes a wrongful conviction, can be held liable under Section 1983. This Court addressed that in the Carrillo case, it addressed that in the Tennyson case, there is no reasonable dispute about that. There is no reasonable dispute that the evidence at issue in this case, the impeachment evidence, this reputation and opinion evidence from Officer Patti, that June Patti should not be believed, is the kind of material evidence that causes a Brady violation when it is not disclosed. Again, we cited case after case after case. The law is very clear that, particularly in a case like this, where there is one key witness, any impeachment evidence is almost inevitably material Brady information that has to be disclosed. And in fact, Nguyen herself did not dispute this. And when asked at deposition, she was clear, she understood if she heard from anyone that June Patti was a liar, she had to tell that to the DA. Her defense is that what Officer Patti says happened didn't actually happen. That's a factual question that has to be decided by the jury. But there's no dispute that she understood very well that if she got that information, she had to disclose it. And so this Court reviewing de novo, whether there is a basis for a Brady claim, the answer is crystal clear under both the facts and the law. In addition, on the facts for the intent question, which is clearly a fact question, we cited, in addition to Defendant Nguyen's own admission that she understood that she had to turn this over, tons of facts about her practice of generally recording every statement that was made to her. We have admissible testimony from an expert, which is another issue here because the Court wrongly excluded it. Police practice is expert explaining what a reasonable police officer would know and routinely do with information like this during an investigation. He talked about the training that you receive as a police officer, which again, Nguyen does not really dispute, which is if someone's important enough to contact in an investigation, it's important enough to write it down, then you need to include it in the murder book, you need to pass it along to the DA. None of this is really in dispute. The qualified immunity question, also not in dispute. This is not a reasonable dispute. This Court specifically addressed exactly this question in both Tennyson and in Carrillo. And the defendants don't really even attempt to distinguish those binding cases. There's no question, and Carrillo specifically says, not only was the Brady duty clearly established decades before this case, but the duty to disclose impeachment evidence in particular was clearly established, again, at least as of, I believe, 1978. Those are the main issues for the summary judgment decision. There's two additional small issues, as I alluded to. There's the question of the admissibility of the police practices expert, which was dealt with in a footnote below. It's an abuse of discretion standard, but applying the wrong law is per se an abuse of discretion. There's no real dispute that what the district court said the law was, which is that you can't consider a police practices expert on reasonableness on summary judgment is just not the law. That's dealing with a different situation when they were trying to use an expert opinion on its own to establish unreasonableness as a matter of law in an excessive force case, which is a legal question. It has nothing to do with whether a police practices expert can help establish what a police officer, as a matter of fact, would know, which is then circumstantial evidence used to establish the factual question of whether suppression was intentional or at least deliberately indifferent or with reckless disregard. Again, we cited many cases recognizing that, of course, that kind of expert testimony is admissible. Then the final issue is the familial association, which, again, there's no question raised in the briefing that that's just derivative of, if we win on summary judgment, no one is arguing that we don't have also familial association claims. They were only dismissed as derivative. If there's no questions, I'll reserve. All right. Why don't you reserve your time? Good morning. Calvin House for Marcella Wynn. I don't think there's any dispute about the relevant legal standards. The fact that June Patti's sister believed that she was a liar is impeachment evidence that would assist the defendant in their case. We certainly all agree on that. There are two points at which we depart. One is whether the information from June Patti was material. By that, we have to determine whether it would have affected the trial. In the words of the Supreme Court last year in the Turner case, information is material if there is a reasonable probability that had the evidence been disclosed, the result of the proceeding would have been different. Now, in that case, the court decided that the material in question was not material and ruled that it was too little, too weak, or too distant from the main evidentiary points. Right. But here, wasn't June Patti the key witness in this case as to the confession, which was a key element in convicting Ms. Mellon? Well, she's not a witness. By confession, I'm not quite sure what the court referred to. I mean, confession. She said that Mellon told her that she had participated in the murder. That's a confession, right? Yes, that's true. And she was the only one who could testify to that, correct? That's right. So doesn't that distinguish this from Turner? It distinguishes it from Turner, but it doesn't make the evidence material because there was a lot of evidence with regard to the truthfulness of June Patti that was available. But which evidence is more powerful than the sister, who's a police officer, saying I grew up with this person, disregard everything she says because she's a congenital liar? What evidence by way of impeachment could have been more powerful than that? Well, first a couple things about the sister. Her testimony has to do, apparently, with things that had happened in childhood. She did not have much contact with her in the years before the murder happened that's involved in this case. It's also clear from her deposition testimony that she was not familiar with the specifics of her interaction with other law enforcement agencies. She had never been present when she was disclosing information, and she knew nothing at all about the homicide investigation in this case. So what stronger evidence would there be? Well, there are at least two things that are much stronger. One is the rap sheet that June Patti had, which disclosed convictions twice for forgery and once for impersonation. Go back to what you just said. If the statement had been turned over, then Ms. Mellenstein could have put the sister on the stand and have her testify to it, and then what you just said could have been used as potentially cross-examination. But what you just said doesn't really go to whether or not the statement should have been turned over. The statement should have been turned over. That's not a question. The issue is whether it's material in the sense that we don't have confidence in the result of the criminal trial. An innocent woman was convicted. I mean, that alone gives me a real lack of confidence in the trial. Well, there were a lot of other things that went on in the trial, too. Yes. I was wondering, we don't have the testimony of the other witnesses. There was no other witness that testified as to a confession. Is that right? The confession that June Patti testified? No, there's not. She's the one who presented that evidence. Well, what other evidence was there besides the testimony of Ms. Patti? With regard to? The guilt of the defendant here. I mean, if you pull that out, what's left in this case? Oh, I do not dispute the fact that without her testimony, there probably would not have been a conviction. So what your argument boils down to is that because there was other bad stuff about this witness, that this bad stuff was just more bad stuff, but there was still plenty of bad stuff. Essentially correct. And the other bad stuff was more convincing than a sister talking about her interactions with her sister many years earlier. It dealt with convictions for having committed crimes. And then there's also the letter that Patti herself sent to the district attorney in which she admitted that she had given a false name to a police officer. And then at trial, she admitted that she had not told the whole truth under oath at the preliminary hearing. What was the new evidence between? I mean, we know that the plaintiff has been exonerated now since. So what was the new evidence between the trial and the exoneration by the district attorney's office? What changed the opinion on this? I'm not familiar with the ins and outs of the exoneration. I mean, it seems like the only thing that changed was the fact that the sister, who was the police officer, came forward and said this person is just an incredible liar. Was there anything else in between? Well, as I say, I'm not familiar with the ins and outs of the exoneration process, but I don't think the fact that the sister came forward and said she's a liar is the whole explanation for the exoneration. Well, it seems pretty, I mean, it's a pretty big jump from going from probable cause to believe someone committed a crime to convincing a jury they committed a crime to she didn't do it. So something changed in the middle. And the only thing that jumped out at me is the fact that it was the sister knew all along, who was a police officer, knew what a liar this person was. So was there another thing that kind of fell out of the sky that changed the dynamics here? I'm not familiar with anything else. But, again, we are not disputing the fact that her testimony is probably responsible for the conviction. The question is whether the statement of the conviction. So your argument essentially boils down, look, you conceded that the information should have been turned over. You conceded that this was a key witness. I mean, the critical witness in the people securing the conviction against Miss Mellon. So the only quibble that you have is, well, the jury already had some impeachment information that demonstrates the witness was a liar. So this new additional information from her sister who grew up with her saying that disregard everything she says because she's always been a liar and will always be a liar, that that wouldn't have changed, wouldn't have been likely to change the outcome. That's what your argument boils down to, right? So we're quibbling over whether a reasonable juror could have changed their minds about the verdict had they heard from the sister? Well, I'm not sure that quibble is the correct word. What I'm saying is the sister's evidence is very weak. My sister's a liar. But if you look at the rest of her deposition testimony, she doesn't have any specifics. And furthermore, she said that Detective Wynn was correct in, or logical was her word, in concluding that June Patti was telling the truth because she gave her a lot of details. So the power of her evidence is extremely limited. And it comes nowhere near the fact that she had lied to police officers before, that she admitted herself that she had testified less than honestly under oath at the preliminary hearing. With that having been put forward, what we're saying is putting the police officer Patti on the stand would not have changed the result because there was a lot that had been put before the jury that challenged the truthfulness of June Patti. But for you to prevail on this appeal, we have to be convinced that no reasonable juror would have found that this evidence would have made any difference, correct? Because of summary judgment. Correct. Although I think would have made it – I'm not sure that the statement about would have made a difference would be the way the jury would be instructed. Well, yes. Well, the summary judgment motion and – To rephrase it, for you to win, you have to convince us that no reasonable juror would consider this additional information from the sister to be material. Correct. That's correct. That is our position. Then let me just say one thing about – Your preliminary question, too, though, whether that information had been turned over to the DA, whether this case would have even been prosecuted or whether it would have triggered further investigation. Well, as to that, we have the sworn statement from the Deputy District Attorney who said that she did not believe that this even qualified as Brady material. So I don't think that she would have concluded that she was not going to go forward with the prosecution because she said she didn't consider it something that would need to be turned over. Now, that's not determinative of whether it, in fact, should have been turned over or not. But in terms of whether there would have been a prosecution, there certainly would have been. So I just wanted to add a word about qualified immunity. There's no question that the requirement that a police officer turn over Brady material to the DA and the possibility of liability if the police officer did not was firmly established long before the facts of this case. But the question in qualified immunity is also whether a reasonable police officer in Detective Wynn's situation would have felt that she was violating the law by not turning the information over. And as to that, as to the state of mind that Detective Wynn had, we have her testimony that she understood what the Brady obligations were. We also know that she turned over a lot of negative information about... Did she also say that she would have turned this information over? But she's disputing that it happened at all. But if it had happened, she would have turned it over, right? Yes, that's correct. And which puts us in a strange position in terms of trying to identify her state of mind. So... Well, but we don't have to really. Isn't it an objective test? Whether a reasonable police officer... Yes. Yes, that's correct. But we don't have to really know exactly. I mean, that seems to be also a question of fact. As to the reasonable police officer? No, as to whether she actually... The statement was made. There seems to be a question of fact that Wynn says that the statement wasn't made to her now. But if it had been made, she would have turned it over. So is that a question of fact? Well, the issue is what a reasonable police officer in her position would have done. So the fact that she said she would have turned it over doesn't end that particular issue. It comes back to whether a reasonable officer would have considered that to be something that was material to the prosecution. And as to that, again, we say that it's not. Because there was much more powerful impeachment evidence that was, in fact, presented at the trial, including the witness's own testimony that she was less than truthful under oath, which makes the statement from the sister not material. Thank you very much. Thank you, counsel. Thank you. To answer a few of the questions or address a few of the things my opposing counsel just raised. First, Laura Patti did not say that her information that she knew was only from many years earlier. In fact, if you look at only a few pages in the record, I think it's ER 963 to 66. It's her deposition testimony on this. She makes very clear that she was aware of a number of false reports that June Patti had made around that time period to the police department at the same time. She was well aware of that. That was part of the basis. She said she was not personally in the room at the time that June Patti made the false reports, but she was well aware of what was happening. She was involved. A number of them had been false accusations against her personally. There also had already been a determination by the Torrance Police Department, the same place where Laura Patti worked, five years earlier, that June Patti was an unreliable informant. That's in the record at ER 1091 to 94. To answer the question about what it was that caused Ms. Mellon's conviction to be vacated, it was the information coming forward from Officer Patti and then the additional information that she knew about. It's clear that Officer Patti, some of what she knew about, some of which came out in looking into the long history of June Patti's interactions with law enforcement. There's a long memo at ER 1075 to 83 detailing the Los Angeles District Attorney's investigation into the many, many, many instances in which June Patti had given false information to law enforcement, many of which were before Susan Mellon's wrongful conviction, but some of which were after. In terms of what was known to either the District Attorney or the Defense Attorney and whether that was sufficient to impeach June Patti at trial, well, obviously it wasn't sufficient to impeach June Patti at trial because that was the only evidence offered against Susan Mellon. And again, the case law is clear on this. If there's suppressed impeachment information, the fact that additional information was known and used, obviously unsuccessfully, does not make the suppressed information not grating material. And that would be a horrible incentive because that would be saying you could disclose a small amount that might not be effective and then say, well, everything else is just cumulative and so we don't have to disclose this information. This Court has rejected that argument time and time again. But if you look at the specifics of what actually was known and what was disclosed, and again, this is the letter that they're talking about. There's no question that Defendant Wynn did not disclose any of this information to the DA. What happened was several months before trial, June Patti happened to send a letter to the District Attorney attempting to get a favor from the DA in some dealing with this minor matter that she had in exchange for her testimony. And she raised it. This is in the record at 1338 to 41. And she's saying, I have a traffic ticket. And my sister is saying she might have me arrested on a warrant on this traffic ticket. And she's accusing me of something. And I didn't do it. And I promise I didn't do it. And there's this letter that explains that. Nothing in that letter. There's no one has ever claimed. You can't claim that anything in that letter says the actual impeachment evidence that was suppressed, which is that Officer Patti saying her sister is the biggest liar she'd ever met in her life, which is, there's also no dispute, admissible opinion evidence under the California Evidence Code. So that testimony on its own is admissible. In addition, what Officer Patti also knew, which was that June Patti had a horrendous reputation in the law enforcement community for providing false information, is another grounds for admissible evidence that could have come in under the California Evidence Code at Ms. Mellon's trial. Then if you look at the responsive letter that the DA sent to June Patti, which is in the record at 1342, that's a one-page letter. And all it says is, I'm letting you know that you can't be arrested because of the special warrant that you're coming in on. You can't be arrested on any old warrants under the subpoena when you come in to testify at a trial. So there's an indication from all of this, and this is what DA Cole knows about, that there's bad blood, which is what she describes and what she says she didn't have to turn over. That's fine. The fact that June Patti is fighting with her sister, I agree, is not impeachment material. We've never said that that's a Brady violation to not disclose that. But that is completely separate from what actually was suppressed and what was, there's no dispute a reasonable jury could find, Marcella Wynn was told, which is that this is the biggest liar I've ever met in my life. That's admissible evidence that needed to be disclosed that was not turned over. On the qualified immunity question, and Carrillo specifically deals with this, it's binding authority on this court and says that there is no qualified immunity for this question. It's answered that question. They're not even attempting to distinguish it. It goes into a lot of detail. Tennyson does the same thing, saying you can't quibble about on the margins. If it's Brady material, which they're agreeing it is, then there's no qualified immunity because it was well established decades ago that police officers knew that they had an obligation to disclose Brady material to the district attorney. And I agree that materiality is, this is a summary judgment case, in order to find against, I mean, I actually think in this case, given the case law, you could find materiality as a matter of law. If you look at the cases, especially a number of habeas cases decided under the EDFA standard, finding that no reasonable court could find in a case where it's, as is undisputed here, it's a single witness case, suppressed impeachment evidence, you could find that there's no reasonable way to find that that's not material. But certainly a reasonable jury could find that it is material, which is all that we need to be able to go to trial on that claim. If there's no questions. All right. Thank you, counsel. Mellon v. Winn will be submitted.
judges: Wardlaw, Nguyen, Owens